# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

MELISSA VASQUEZ ex rel.　　　　)
S.R.A.,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　)　　Case No. EDCV 08-00449 AJW
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　**MEMORANDUM OF DECISION**
MICHAEL J. ASTRUE,　　　　　　　)
Commissioner of the Social　　　　)
Security Administration,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　)
_____)

Plaintiff's mother filed this action on plaintiff's behalf for judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff's application for child's supplemental security income ("SSI") disability benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. Plaintiff was born on August 26, 1995 and was ten years old when her application for benefits was filed on December 1, 2005. [Administrative Record ("AR") 13, 55-61]. She alleged disability due to oppositional defiant disorder, attention deficit hyperactivity disorder, an anxiety disorder,

and a depressive disorder.[1] [JS 2].

In a written hearing decision that constitutes the Commissioner's final decision, an administrative law judge ("ALJ") found that plaintiff has "severe mental impairments from what would colloquially be called a bad attitude, but in mental health jargon is described as an oppositional defiant disorder (ODD) and attention hyperactivity disorder (ADHD). She also has an anxiety disorder, according to a consultative psychiatrist (20 C.F.R. [§] 416.924(c))." [AR 13]. The ALJ concluded that from December 1, 2005 through the date of decision, plaintiff was not disabled under the childhood disability standard because her impairments were not medically or functionally equivalent to any impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listing"), and do not impose "marked or extreme limitations on function in any realm." [AR 13].

### Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must

---

[1]      Although plaintiff alleged an onset date of March 20, 2002, the earliest onset date which the ALJ could have considered was December 1, 2005, the protective filing date of plaintiff's SSI application [AR 55-61]. Hence, the relevant period in this case is from December 1, 2005 through September 28, 2007 (the date of the ALJ's decision denying SSI benefits). [AR 10-20]. Plaintiff's medical status prior to this period is not directly at issue because SSI benefits may not be paid retroactively. See 42 U.S.C. § 1382(c)(7); 20 C.F.R. §§ 416.202, 416.501.

1   be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595,

2   599 (9th Cir.1999)).

3                                         **Discussion**

4           **Standard governing childhood disability**

5           A child under the age of 18 is disabled within the meaning of the Social Security Act "if that

6   individual has a medically determinable physical or mental impairment, which results in marked and

7   severe functional limitations, and which can be expected to result in death or which has lasted or can be

8   expected to last for a continuous period of not less than 12 months.**"** 42 U.S.C. §1382c(a)(3)(C)(I) (as

9   amended); see 20 C.F.R. § 416.906; see also Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir.

10  2000) (citing section 1382c(a)(3)(C)(I)).  The regulations governing the evaluation of childhood disability

11  provide that "if the child's impairment or impairments do not meet, medically equal, or functionally equal

12  in severity a listed impairment, the child is not disabled." Brown v. Callahan, 120 F.3d 1133, 1135 (10th

13  Cir. 1997) (citing 20 C.F.R. § 416.928 (a)); see 20 C.F.R. §§ 416.902, 416.906, 416.924-416.926a

14  (regulations concerning childhood disability standards).

15          To meet a listed impairment, a claimant must show that his or her impairment "meet[s] all of the

16  specified medical criteria. An impairment that manifests only some of those criteria, no matter how

17  severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990); see Tackett v. Apfel, 180 F.3d

18  1094, 1099 (9th Cir. 1999).  To medically "equal" a listed impairment, a claimant must present medical

19  findings at least equal in severity and duration to all of the criteria for the most similar listed impairment.

20  See Sullivan, 493 U.S. at 531; Tackett, 180 F.3d at 1099-1100; 20 C.F.R. § 416.926 (discussing medical

21  equivalence for adults and children).

22          If a child disability claimant does not have an impairment or combination of impairments that

23  meets or equals any listing, the ALJ must consider "whether it results in limitations that functionally equal

24  the listings." 20 C.F.R. § 416.926a(a). "Functional equivalence" is determined not by reference to the

25  criteria for any particular listed impairment, but by reviewing all relevant information in the case record,

26  including information from a broad range of medical sources and non-medical sources, to assess the

27  child's functioning in six areas, which are referred to as "domains." See 20 C.F.R. § 416.926a.  The

28  domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and

                                                3

relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  An impairment or combination of impairments functionally equals the listing if, applying criteria detailed in the Commissioner's regulations, it results in "marked" limitations in two of these domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a),(e)-(l).

**Treating psychiatrist's opinion**

Plaintiff contends that the ALJ committed legal error by disregarding without explanation diagnoses of depression made by plaintiff's treating psychiatrist, Ike Ohiaeri, M.D. [JS 3-6].

The record includes treatment reports from Dr. Ohiaeri at Foothill Behavioral Health Clinic in Victorville, California, from October 25, 2005 (when plaintiff was ten years old) through September 5, 2007. [AR 90-100, 149-156].   According to Dr. Ohiaeri's notes, there was a gap of six months between plaintiff's initial visit in October 2005 and her next appointment in April 2006 because she lost her Medi-Cal benefits during the period. [AR 98, 125]. During the September 2007 administrative hearing, plaintiff's mother, Ms. Vasquez, testified that plaintiff had been seen at that clinic since she was six years old, and that she was seen monthly. [AR 165]. At the time of the hearing, plaintiff's mother said that plaintiff was taking Paxil for depression and Focalin for ADHD. [AR 67, 165-166]. Zoloft had previously been prescribed but was discontinued. [AR 165-166].  Plaintiff's mother testified that plaintiff took her medications, and that they helped her "[t]o a point, not completely . . . . She tells me they don't help her at all. . . . I think they help take the edge off, that's it.  They don't stop the behaviors, they just take the edge [off]." [AR 166].  Plaintiff apparently also received counseling, but there are no progress notes in the record. [See AR 55, 97, 125].

Dr. Ohiaeri diagnosed plaintiff with attention deficit disorder, sometimes with hyperactivity and sometimes without, depression or depressive disorder, and ODD. [See AR 90-100, 149-156].  Dr. Ohiaeri assigned plaintiff Global Assessment of Function ("GAF") scores of 55 or 58 between October 2005 and January 2007, and 60 between March and September 2007.[2] His narrative assessments include references

---

[2]The GAF score is a "multiaxial" assessment that reflects a clinician's judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The

to "molestation issues," and note some behavioral problems such as defiant or oppositional behavior [AR 90-100, 149-156], but he also reported that plaintiff's symptoms improved over time with medication and counseling. [See, e.g., AR 100 ("Much improved mood" in October 2005); AR 98 (noting, in April 2006, that after a six month gap in treatment, plaintiff had been "talking back at teacher, [had] poor attention"); AR 154 (June 2006 progress note reporting that plaintiff was "[s]truggling in school," but "was still able to sign up for summer school.  More easily redirectable."); AR 153 (stating, in July 2006, that "attention/concentration remain problematic"); AR 150 (noting that in October 2006, plaintiff was "[d]oing well in school. Oppositional [with] mother."); AR 96-97 (progress reports from January 2007 and March 2007 stating that plaintiff reported normal concentration, sleep, appetite, and energy, and no weight change; assessment was [d]oing OK but more impulsive"); AR 95 (stating that "[s]ome behavioral problems persist" as of May 2007, such as impulsivity and defiance toward adults); AR 94 (noting, in June and July 2007, that plaintiff's "[m]ood is improving[;] defiance remains an issue"); AR 92 (noting, in August 2007, "[s]ome defiance with mother, but overall a nice kid.  Mood is improving, defiance remains an issue."); AR 91 (reporting, in September 2007, that plaintiff "tends to become more emotional in days before [her] period. Mood is improving, defiance remains an issue.")].

To support his finding that plaintiff's impairments did not meet, medically equal, or functionally equal a listed impairment, the ALJ stated that plaintiff's

> mental functions are normal as noted in the psychological consultation performed on February 1, 2006.  A mental status examination performed by the claimant's treating psychologist on January 18, 2007 was completely withing normal limits and the same on all subsequent visits through September 5, 2007. [Plaintiff] is on Focalin and Paxil.

[AR 13 (citing AR 91, 97)]. Elsewhere in his decision, the ALJ concluded that the treatment reports from Dr. Ohiaeri "indicated [that] the claimant is responding to medications and tolerating them well." [AR 16

GAF score is the lower of the symptom severity score or the functioning severity score. A GAF score of 51 through 60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment (4th ed. 1994)(revised 2002); see also Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 598 n.1 (9th Cir.1999)("Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient.").

1   (citation omitted)], and that "the claimant is oppositional to her mother at times, has high standards for

2   her friends and is often disappointed with them, but is able to retain some friends." [AR 17 (citing AR 91-

3   100, 122-123)].  The ALJ said that he "fully agree[d] with the assessment of the State Agency board

4   certified psychiatrists," who opined that plaintiff's impairments, singly or combination, did not meet,

5   medically equal, or functionally equal  the listing. [AR 13 (citing AR 116-131)].

6          In general, "[t]he opinions of treating doctors should be given more weight than the opinions of

7   doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)(citing Reddick

8   v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.

9   2001).  A treating physician's opinion is entitled to greater weight than those of examining or non-

10  examining physicians because "treating physicians are employed to cure and thus have a greater

11  opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152,

12  1157 (9th Cir.  2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social

13  Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902,

14  416.927(d)(2). An examining physician's opinion, in turn, generally is afforded more weight than a non-

15  examining physician's opinion. Orn,495 F.3d at 631.

16         When a treating physician's medical opinion as to the nature and severity of an individual's

17  impairment is well-supported and not inconsistent with other substantial evidence in the  record, that

18  opinion must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund, 253 F.3d at 1157;  SSR 96-

19  2p, 1996 WL 374188 SSR 96-2p, 1996 WL 374188, at *1-*2. The ALJ must provide clear and convincing

20  reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source

21  opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected

22  for specific and legitimate reasons that are based on substantial evidence in the record.  Batson v. Comm'r

23  of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v.

24  Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

25         Although he mistakenly characterized Dr. Ohiaeri as the treating psychologist rather than the

26  treating psychiatrist, the ALJ considered and discussed Dr. Ohiaeri's treatment reports.  By finding that

27  plaintiff had ODD and ADHD, the ALJ acknowledged and accepted two of the three diagnoses made by

28  Dr. Ohiaeri.  Those two diagnoses were consistent with the subjective reports of behavioral problems

made to Dr. Ohiaeri by plaintiff and her mother, the mildly abnormal mental status findings noted in his progress reports, and his conclusion that while "defiance remains an issue," plaintiff's ADHD and mood swings responded favorably to medication. Dr. Ohiaeri gave plaintiff GAF scores ranging from a low of 55 in 2006 to a high of 60 for much of 2007, indicating that plaintiff's functional limitations diminished with treatment and that she had no more than a moderate impairment in functioning.  Cf. 20 C.F.R. § 416.926a(e)(defining a "marked" limitation as one that is "'more than moderate' but 'less than extreme'").

Standing alone, a diagnosis of depression does not establish disability.  See Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed emotional disorder "is not per se disabling," and that "there must be proof of the impairment's disabling severity").  There is no evidence in Dr. Ohiaeri's reports or elsewhere in the record that plaintiff's depression, alone or in combination with her ADHD and ODD, meets or medically equals the listing.  See generally 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 112.00-112.12 (criteria for establishing the existence of disabling mental disorders in children).  To the contrary, the ALJ permissibly concluded that the reports of the consultative examining psychologist, the consultative examining psychiatrist, and two non-examining psychiatrists support his determination that plaintiff's impairments did not meet or medically equal the listing.  [See AR 13-20, 116-140].

The consultative examining psychologist, Dr. Goldman, examined plaintiff in February 2006.  She elicited a history and conducted a mental status examination.  Dr. Goldman also administered the Wechsler Intelligence Scale for Children, Fourth Edition, which measures intellectual functioning, including full-scale IQ, and the Wide Range Achievement Test-3, which measures "academic abilities in spelling, reading, and arithmetic."[3] [AR 138-139].

---

[3]    The Commissioner's regulations endorse the use of the standardized psychological tests to evaluate impairment severity in children.  See, e.g., 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00.C. ("In most functional areas, there are two alternative methods of documenting the required level of severity: (1) Use of standardized tests alone, where appropriate test instruments are available, and (2) use of other medical findings. The use of standardized tests is the preferred method of documentation of such tests are available.")(citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00D).  Those regulations specifically authorize use of the Wechsler series and the Wide Range Achievement Test.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 112.00C, 112.00D9.

1   Dr. Goldman concluded that plaintiff exhibited no diagnosable mental disorder. [AR 139]. She

2 assigned plaintiff a GAF score of 68, signifying some mild symptoms, or some difficulty in social,

3 occupational, or school functioning.  See American Psychiatric Association, Diagnostic and Statistical

4 Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. 1994)(revised 2002). Dr. Goldman

5 opined that plaintiff was not impaired in the ability to "understand and respond to increasingly complex

6 requests, instructions and questions in an age appropriate manner," "communicate by understanding,

7 initiating and using language in an age appropriate manner," and "socially integrate with peers and adults

8 in an age appropriate manner." [AR 140].

9   The consultative examining psychiatrist, Dr. Woodard, reviewed Dr. Goldman's examination

10 report, took a history, and administered a mental status examination in May 2006. [AR 127-129].  He

11 concluded that plaintiff had "anxiety disorder of childhood," a diagnosis that the ALJ accepted, and opined

12 that plaintiff's anxiety "is probably contributing to her problematic behavior and to her scholastic

13 underachievement." [AR 13, 129]. Dr. Woodard did not assess any specific functional limitations. He

14 recommended a continued "psychotherapeutic program and some tutorial assistance." [AR 129].

15   Non-examining state agency psychiatrists who reviewed plaintiff's file in February 2006 and

16 October 2006 concluded that plaintiff's impairments did not meet, medically equal, or functionally equal

17 a listed impairment. The two non-examining physicians opined that plaintiff had no limitations in the

18 domains of caring for oneself and moving about and manipulating objects, and less than marked

19 limitations in the other domains.  [AR 116-126, 130-135].

20   The reports of the examining and non-examining physicians, which are based in part on the use

21 of standardized tests endorsed by the Commissioner, are substantial evidence supporting the ALJ's

22 findings that plaintiff had ODD, ADHD, and anxiety disorder, and that her impairments do not meet,

23 medically equal, or functionally equal a listed mental disorder. Furthermore, while the ALJ rejected one

24 of the three treating diagnoses put forward by Dr. Ohiaeri, the ALJ did not disregard the functional

25 limitations reflected in Dr. Ohiaeri's notes regarding plaintiff's subjective symptoms and his clinical

26 observations.  Rather, he factored that evidence into his analysis of the relevant domains for purposes of

27 assessing functional equivalence . [See AR 13-20].

28   At most, the ALJ's failure to adopt Dr. Ohiaeri's diagnosis of depression was harmless error. See

1    Carmickle v. Comm'r, Soc. Sec.  Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)(holding that "so long as

2    there remains substantial evidence supporting the ALJ's conclusions," and "the error does not negate the

3    validity of the ALJ's ultimate conclusion, [the error] is deemed harmless and does not warrant

4    reversal")(alteration and internal quotation marks omitted).

5         **Teacher questionnaire**

6         Plaintiff contends that the ALJ committed legal error by discussing "minuscule portions" of a

7    questionnaire completed by her fourth-grade teacher, Violet Carter. [JS 6-9]. To support that contention,

8    plaintiff cites the following portion of the ALJ's decision:

9         According to her teacher, the claimant has moderate-to-greater severity of problems in this

10        domain ["caring for yourself"], including extreme intolerance of frustration and poor

11        coping skills. Nevertheless, she performs her daily living skills independently at home and

12        is responsible for chores, despite being oppositional at times.

13   [AR 18-19 (citing AR 146)].

14        A school teacher is not an "acceptable medical source" within the meaning of the regulations.  See

15   20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d)(defining an "acceptable medical source" and explaining

16   that "educational personnel" such as "school teachers" are "other sources"). Evidence from "acceptable

17   medical sources" is required to establish the existence of a medically determinable impairment. 20 C.F.R.

18   §§ 404.1513(a), 416.913(a), 416.924a(b)(2).   Under the regulations governing the determination of

19   disability in children, information from "other sources," including (among others) classroom teachers, is

20   also used to establish the severity and functional effects of a child's impairments.  See 20 C.F.R. §

21   416.924a.  The ALJ, however,  is not required to give information from other sources, such as teachers,

22   the same weight as information from an acceptable medical source. Gomez v. Chater, 74 F.3d 967, 970-

23   971 (9th Cir.) (holding that the regulations permit the Commissioner to give "less weight" to opinions

24   from "other sources"), cert. denied, 519 U.S. 881 (1996); see also SSR 06-03p.

25        Plaintiff's contention mischaracterizes the ALJ's decision. The ALJ did *not* limit his discussion

26   of Ms. Carter's teacher questionnaire to the brief excerpt plaintiff cited concerning the domain of caring

27   for oneself. Rather, the ALJ discussed Ms. Carter's questionnaire responses concerning each of the six

28

1  relevant domains ((1) acquiring and using information, (2) attending and completing tasks, (3) interacting
2  and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health
3  and physical well-being).   [See AR 13-19].

4      With respect to the domain of acquiring and using information, the ALJ observed that
5      [a]ccording to the claimant's fourth grade teacher, the claimant's instructional level has
6      generally been at grade level to slightly below and she is one year behind in written
7      expression.  She participates in class discussion, completes math problems, and has no
8      apparent communication problems.

9  [AR 141-148].  Regarding the domain of attending to and completing tasks, the ALJ commented that Ms.
10  Carter "reports [that] the claimant is distracted easily, distracts others, has problems with pacing, and does
11  not work well independently." [AR 15 (citing AR 143)].  With respect to the domain of interacting and
12  relating with others, the ALJ noted that Ms. Carter "indicate[s that] the claimant is subject to anger issues,
13  has difficulties with her peers, and does not respect authority.  She has a behavioral plan in place at school
14  and has been removed from class in the past." [AR 16 (citing AR 102-111, 144)].  The ALJ also cited Ms.
15  Carter's report to support his conclusion that plaintiff's ability to move about and manipulate objects
16  "seem age-appropriate, with no evidence of fine or gross motor delays, and no limitation in her ability to
17  participate in regular physical education classes." [AR 17 (citing AR 145)].

18      The ALJ adequately summarized Ms. Carter's responses germane to each of the domains.  He was
19  not required to describe or comment upon every response in Ms. Carter's questionnaire.  In finding that
20  plaintiff had limitations that were "less than marked" in acquiring and using information, attending and
21  completing tasks, and interacting and relating with others, the ALJ credited many of Ms. Carter's
22  observations about the existence and nature of plaintiff's behavioral issues.[4]

23  ─────────────────

24      [4]   For all of the domains other than "health and physical well-being," a "marked"
25  limitation exists

26      when your impairment(s) interferes seriously with your ability to
27      independently initiate, sustain, or complete activities. Your day-to-day
       functioning may be seriously limited when your impairment(s) limits only
28      one activity or when the interactive and cumulative effects of your

The ALJ, however, was not obliged to adopt Ms. Carter's assessment of the functional severity of plaintiff's impairments in each domain.  Where his assessment of the degree of functional impairment differed from that suggested by Ms. Carter's questionnaire responses, the ALJ supported his conclusions with substantial evidence in the record, including the reports of treating psychiatrist Dr. Ohiaeri, the reports of the consultative examining psychologist, the consultative examining psychiatrist, and the non-examining state agency psychiatrists, notes of plaintiff's behavior during a social security field office interview, and plaintiff's mother's testimony. [See AR 13-20].

Accordingly, plaintiff's argument that the ALJ disregarded Ms. Carter's questionnaire responses lacks merit.

**Lay witness testimony**

Plaintiff contends that the ALJ failed adequately to consider the lay witness testimony of plaintiff's mother, Ms. Vasquez. [See JS 101-3]. Plaintiff asserts that the ALJ erred by

merely stat[ing], "It is clear from the school records from Mojave Mesa Elementary and the mother's testimony that the claimant's unacceptable behavior brings no significant unpleasant consequences to her, nothing more than the usual 'time out,' loss of trivial privileges, or being home schooled for a week—probably just what the claimant wanted."

[AR 13].

Plaintiff's argument again mischaracterizes the ALJ's decision.  The above-quoted passage is neither the only nor the principal discussion of plaintiff's mother's testimony in that decision.  Consistent with plaintiff's own description of Ms. Vasquez's testimony [JS 10], the ALJ summarized her testimony as follows:

[Ms. Vasquez] asserted the claimant is depressed, cries, says she wants to die, does not follow rules, and is defiant.  She complained her daughter has a spoiled life, yet seemed

impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R.  § 416.926a(e)(2)(i).

1   to take little responsibility in this regard. She stated the claimant has poor concentration
2   and repeated the third grade, but receives average grades (C's) in school.  She stated that
3   claimant rides the bus to and from school.  She stated the claimant has been receiving
4   mental health treatment since age six, and continues to receive mental health treatment one
5   time per month.  She initially denied that medications did any good, but subsequently
6   acknowledged that they helped "a little."  The claimant lives with her mother in a house
7   and also with her mother's boyfriend, who supports what welfare does not cover.  When
8   at home, the claimant watches television or rides her bicycle, but does not do her chores.
9   [AR 19].

10      While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ
11   may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart,
12   464 F.3d 968, 972 (9th Cir. 2006)(quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)). Germane
13   reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the
14   medical evidence, inconsistencies between that testimony and the claimant's presentation to treating
15   physicians during the period at issue, and the claimant's failure to participate in prescribed treatment. See
16   Greger, 464 F.3d at 971; Bayliss, 427 F.3d at 1218.

17      Citing Dr. Ohiaeri's observations of plaintiff's ongoing oppositional and defiant behavior with her
18   mother but otherwise positive response to treatment, the ALJ reasonably concluded that plaintiff's
19   unresolved conflicts with her mother—rather than a disabling mental impairment—explained much of the
20   disruptive behavior described in Ms. Vasquez's testimony.  The ALJ acknowledged Ms. Vasquez's
21   testimony that plaintiff has poor concentration and repeated third grade.  He also noted, however, that
22   plaintiff receives average grades, and that she was performing at or slightly below fourth-grade level
23   except in the area of written expression, where she was a year below grade level. [AR 14, 19].

24      The ALJ adequately considered Ms. Vasquez's lay witness testimony and provided germane
25   reasons for his evaluation of that testimony. Plaintiff's contention to the contrary is without merit.

26   ///

27   ///

28   ///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards.  Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

May 19, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge

13